IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MAURICE COLLINS,

                Plaintiff,

v.                                                                          OPINION and ORDER

LT. CHATMAN,                                                       23-cv-30-jdp

                Defendant.

---

Plaintiff Maurice Collins, without counsel, alleges that defendant Lt. Chatman used excessive force on him by tasing him even though he was restrained and not resisting being force-fed. Collins, who is incarcerated at Columbia Correctional Institution (CCI), brings an excessive force claim under the Eighth Amendment.

Chatman moves for summary judgment. Dkt. 18. Chatman contends that Collins, who was on a hunger strike, resisted nurses' efforts to tube-feed him pursuant to a court order, and that he tased him in a good-faith effort to gain his compliance with that order. Chatman adds that he tased Collins only after he and the nurses repeatedly failed to persuade him to allow the tube feeding, and that video footage corroborates his account of the incident. Collins contends that he couldn't resist the nurses' efforts to insert the feeding tube because he was restrained, and that Chatman tased him out of frustration because the nurses' efforts were unsuccessful. Collins adds that Chatman accused him of resisting the nurses' efforts as an excuse to tase him.

Video of the incident shows that Collins initially attempted to avoid the tube feeding and engaged in other defiant behavior. The evidence also establishes that the nurses who attempted to conduct the tube feeding told Chatman about Collins's resistance. Chatman

ultimately deployed his taser for approximately five seconds, but only after making repeated, non-forceful, efforts to persuade Collins to comply with the nurses' efforts. The only reasonable conclusion is that Chatman tased Collins in a good-faith effort to gain his compliance with a medically necessary court order to tube feed him. I will grant Chatman's motion.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

At the time of the incident, Chatman, the sole defendant here, was employed as a correctional captain at CCI. Collins was housed at CCI in the restrictive housing unit (RHU). Prisoners in the RHU typically present a high-security risk, including self-injury. Collins was engaging in a hunger strike and was being routinely tube-fed pursuant to a Wisconsin circuit court order determining that force-feeding him was medically necessary and justified to protect his health. CCI staff were required to follow the court order.

On the day of the incident, Collins was on temporary lockup status for disobeying orders and disruptive conduct. At around 5:00 p.m., Collins initially refused to leave his cell for his scheduled tube feeding. Lt. Bortz informed Chatman, who then assembled a "pad-subduing" team consisting of five correctional officers, including Heriberto Ruiz. When the pad-subduing team went to Collins's cell, he complied with Chatman's order to exit and submit to restraints. The team placed Collins in a restraint chair and wheeled him to the exam room to start his court-ordered tube feeding. It is standard procedure to restrain prisoners who are removed from the RHU for court-ordered tube feedings.

Nurse Johnson attempted to put the feeding tube in Collins's nose, but he moved his head away from her. Dkt. 21-1 (Def.'s First Video 12:21, 12:23–38). Chatman directed Ruiz

to secure Collins's head in a compliance hold, and Ruiz tilted Collins's head back and held it against his chest. The parties dispute the precise placement of Ruiz's hands on Collins's face, but that dispute is immaterial. Johnson continued without success for several minutes, and she accused Collins of resisting her efforts. *See id.* (14:22–27). Shortly thereafter, Ruiz stated that Collins was blocking the tube, upon which Chatman held a taser to his leg without firing it and ordered him to stop resisting. Collins repeatedly threatened to bite Ruiz's hands and fingers, and repeatedly stated that the group would be there until 5:00 a.m. *See, e.g.,* Dkt. 21-1 (Def.'s First Video 14:37; 16:42–47, 16:58; 17:19, 17:46–51, 17:59).

After several unsuccessful attempts to insert the tube, Johnson called nurse Holmen for assistance. Collins repeatedly moved his head away when Holmen tried to insert the tube, after which Ruiz put him in a compliance hold. Dkt. 21-2 (Def.'s Second Video 0:24–32). Neither Holmen nor Johnson managed to insert the tube, and they both accused Collins of obstructing their efforts. *Id.* (1:52, 2:32, 4:50, 5:07). Chatman then deployed his taser, holding it to Collins's leg and using it as a drive stun for approximately five seconds. *Id.* (5:09–5:14); Dkt. 22 ¶¶ 31–33. Johnson then continued to insert the tube without success for two minutes, after which she told Chatman that she needed more supplies.

Chatman directed officers to transport Collins to the programming area in the meantime. The officers returned Collins to the exam room approximately 20 minutes later. Johnson managed to insert the tube without incident, and Collins completed his scheduled feeding.

The parties dispute whether Collins resisted insertion of the feeding tube when the nurses were trying to insert it, and the video doesn't conclusively answer that question. The video shows Collins violently coughing, gagging, and breathing in a heavily labored manner. At

3

varying times, Johnson, Holmen, Chatman, and Ruiz can be heard saying that Collins was resisting the nurses' efforts to insert the feeding tube by creating tension in his throat and refusing to swallow. By contrast, Collins contends that the nurses simply couldn't manage to get the tube down his throat, and he suggests that Ruiz's placement of his hand around the bridge of his nose played a role in that result.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

To establish a claim for excessive force based on a prison official's use of force, the prisoner must show that the official applied the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Even if a prison official's use of force causes a prisoner objectively serious injury, the conduct violates the Eighth Amendment only if the official acts maliciously and sadistically for the purpose of harming the prisoner. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). To make this determination, courts should consider all the circumstances, and may consider "the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); Fed. Civ. Jury Instr. 7th Cir. 7.18 (2017).

In many circumstances, such as when prison officials face aggression, disruption, or physical threats from prisoners, "compelling compliance with an order is a valid penological justification for use of a taser." *Lewis*, 581 F.3d at 477. Put differently, a prison official's use of a taser in these and other circumstances can be a "good faith effort to maintain or restore

4

discipline within the [prison]." *See Forrest v. Prine*, 620 F.3d 739, 747 (7th Cir. 2010); *cf. Lewis*, 581 F.3d at 478 (recognizing that "any number of scenarios" could justify the use of a taser in the penal context).

No reasonable juror could conclude that Chatman tased Collins maliciously and sadistically to harm him. The video of the events conclusively shows that Chatman tased Collins in a good-faith effort to get him to comply with his court-ordered tube feeding.

Chatman had a duty to ensure that Collins was fed. Collins was engaging in a hunger strike and being routinely force-fed pursuant to a court order. Prison officials have a duty to ensure that prisoners receive adequate nutrition, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and Collins doesn't dispute that Chatman had to follow the court order to force-feed him. Collins's contention that he had an absolute legal right to refuse his court-ordered feeding is incorrect. Dkt. 33 ¶ 38; *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) ("Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death."); *Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) ("[A]t some point in Freeman's meal-skipping the prison doctors would have had a duty and certainly a right to step in and force him to take nourishment.").

The parties dispute whether Collins resisted insertion of the feeding tube by tensing his throat and refusing to swallow. But the video shows that Johnson and Holmen stated that Collins was resisting insertion of the tube. *See* Dkt. 21-1 (Def.'s First Video 14:22–27, 20:21); Dkt. 21-2 (Def.'s Second Video 1:52, 2:32, 4:50, 5:07). Chatman, as a correctional captain, was entitled to defer to the nurses' determination that Collins was engaging in that behavior. *Cf. McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022) ("[C]orrections officers are not

5

constitutionally obligated to override the judgment of medical professionals unless they have reason to know that an inmate is receiving inadequate treatment.").

No reasonable jury could find from the video that Chatman subjectively believed that the nurses couldn't insert the tube for a reason other than Collins's alleged resistance. Collins repeatedly moved his head away when Holmen first tried to insert the tube. Chatman repeatedly threatened to bite Ruiz's hands and fingers, and repeatedly stated that the group would be there until 5:00 a.m. Collins contends that the compliance hold was restricting his breathing, but there's no basis to infer that Chatman believed that it had that effect. Further, Collins contends that he couldn't resist insertion of the tube because he was restrained and his head was secured. *See* Dkt. 33 ¶ 35; *see also* Dkt. 32 at 9. But the nurses stated that Collins wasn't allowing them to insert the tube down this throat by creating tension and refusing to swallow. *See* Dkt. 21-1 (Def.'s First Video 20:21); Dkt. 21-2 (Def.'s Second Video 4:50, 5:07).

Chatman exercised restraint before ultimately tasing Collins. Chatman repeatedly asked Collins to comply with the tube feeding and, after Johnson initially couldn't insert the tube, he held the taser to his leg as a show of force but didn't fire it. Dkt. 21-1 (Def.'s First Video 15:56–16:25). Chatman ultimately tased Collins, but only after Holmen and Johnson again failed to insert the tube and stated that he wasn't allowing them to take that step. In the run-up to the firing, Chatman repeatedly tried to persuade Collins to allow the nurses to insert the feeding tube and cautioned Collins that he would tase him if he continued to resist their efforts. *See Forrest*, 620 F.3d at 745 (officer's repeated warnings that noncompliance with orders would result in tasing supported determination that actions were in good faith).

Once Chatman fired the taser, he held it to Collins's leg and used it as a drive stun for approximately five seconds. Dkt. 22 ¶¶ 31–33. Collins didn't fire his taser again, and Johnson

6

later successfully conducted the tube feeding. The evidence shows that Chatman "was proceeding in a professional manner to accomplish a difficult task in a [serious] situation." *Cf. id.* at 746.

Collins contends that Chatman tased him out of frustration because the nurses' efforts were unsuccessful. But Collins hasn't identified any facts that would reasonably support that determination, such as conduct by Chatman showing that he "was angry when he employed the taser." *See Forrest*, 620 F.3d at 746. "[O]n this record, that theory is wholly speculative, and [Collins] is not entitled to such an unsupported inference." *See id.*

Collins contends that there is a "common practice" at maximum-security DOC prisons by which correctional officers falsely accuse prisoners of resisting as a "ploy" to use force on them. *See* Dkt. 33 ¶ 37. But the video overwhelmingly supports Chatman's position that he tased Collins in a good-faith effort to get him to comply with his court-ordered tube feeding. Even if false accusations of resistance were a common practice, the evidence here shows that Collins was indeed actively resisting efforts to feed him.

Collins states that being tased caused him agonizing pain and left a quarter-sized burn on his thigh that turned into a painful blister. *Id.* ¶ 30. But injury alone isn't enough to show that Chatman used force maliciously and sadistically to harm Collins. *See Lewis*, 581 F.3d at 477; *Harper*, 400 F.3d at 1065. The evidence as a whole compels the conclusion that Chatman tased Collins in a good-faith effort to gain compliance with a court order.

7

ORDER

IT IS ORDERED that:

1. Defendant Lt. Chatman's motion for summary judgment, Dkt. 18, is GRANTED, with the result that plaintiff Maurice Collins's Eighth Amendment excessive force claim is DISMISSED with prejudice.

2. The clerk of court is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered April 30, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge